**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| SHAWNETTA LEWIS, | |
| Plaintiff, | |
| v. | Civil Action No. 8:12-cv-00983-AW |
| MV TRANSPORTATION, INC., | |
| Defendant. | |

**<u>MEMORANDUM OPINION</u>**

Pro se Plaintiff Shawnetta Lewis (Lewis) brings this action against her former employer, MV Transportation (MVT). Lewis asserts disability discrimination and retaliation claims under the ADA, along with a disability discrimination claim under Maryland state law. Presently outstanding is is Defendant's Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the reasons articulated herein, the Court **GRANTS** Defendant's Motion to Dismiss.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following facts primarily from Lewis's Amended Complaint. Although the Amended Complaint is technically correspondence as Lewis filed it improperly, the Court treats it as an Amended Complaint in light of Lewis's pro se status. This decision does not prejudice Lewis because the Amended Complaint is a more detailed variant of the original Complaint.

Lewis's Amended Complaint sounds in disability discrimination. Lewis started working for MVT in 2005. In early August 2009, Lewis started having seizures. MVT ordered Lewis off work due to her seizures. During her absence, Lewis saw her doctor. Lewis's doctor gave her a note stating that she was able return to work with "light duty work restrictions." Doc. No. 14-1 ¶ 15.

In the same month, Lewis presented the note to her immediate supervisor, James Wahu. Wahu allegedly refused to accommodate Lewis's request for light duty and ordered her to take unpaid FMLA leave.

On August 10, 2010, MVT sent Lewis a letter "indicating the possibility of returning to work." *Id.* ¶ 20. However, MVT has yet to reemploy Lewis.

In early May 2011, Lewis filed a charge of discrimination with the EEOC.[1] *See* Doc. No. 10-2. In the section of the charge in which employees must specify the type of discrimination they experienced, Lewis checks in the box for disability only. The EEOC issued a right-to-sue letter in late December 2011.

On March 29, 2012, Plaintiff filed her Complaint. Doc. No. 1. The Complaint is a slightly less detailed version of the Amended Complaint. The Complaint asserts one claim: disability discrimination under the ADA.

On the same day, Lewis moved for leave to proceed in forma pauperis. Doc. No. 2. The Court granted this Motion on May 31, 2012. Doc. No. 5.

MVT filed a Motion to Dismiss on August 20, 2012. Doc. No. 10. MVT's lead argument is that Lewis failed to exhaust administrative remedies inasmuch as she failed to institute her EEOC charge within 300 days of MVT's allegedly discriminatory actions.

---

[1] In fact, Lewis filed the charge with the Maryland Commission on Human Relations (MCHR). The distinction between the MCHR and the EEOC is irrelevant to the issues in this case. For simplicity's sake, the court refers to the MCHR as the EEOC.

The Clerk of the Court sent Lewis a Rule 12/56 letter on August 21, 2012. Doc. No. 12. The letter states in boldface that the Court may dismiss the case if Lewis fails to file a timely written response. The letter specifies the time for responding as seventeen days from the date of the letter. The seventeen days the letter prescribes expired on September 7, 2012.

Despite the Clerk's issuance of the letter, Lewis has failed to respond to MVT's Motion to Dismiss. Instead, she filed a Second Motion for Leave to Proceed In Forma Pauperis (Second IFP Motion) on August 29, 2012. Doc. No. 13. The Second IFP Motion is not a substantive document and does not address MVT's Motion to Dismiss.

On September 10, 2012, three days after the deadline for responding to MVT's Motion to Dismiss, Lewis filed her purported Amended Complaint. Although Lewis complied with neither the Local Rules nor the Federal Rules of Civil Procedure in filing this document, the Court treats this filing as an Amended Complaint.

## II.   STANDARD OF REVIEW

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction—Rule 12(b)(1)

"There are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* Where the defendant contends that the complaint fails to allege facts sufficient to establish subject matter jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* "Second, it may be contended that the jurisdictional allegations of the complaint [are] not true." *Adams*, 697 F.2d at 1219. In such cases, "the court is free to consider exhibits outside the pleadings to resolve factual disputes

3

concerning jurisdiction." *Zander v. United States*, 843 F. Supp. 2d 598, 603 (D. Md. 2012) (internal quotation marks omitted) (citing *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (2002)).

**B.     Motion to Dismiss for Failure to State a Claim—Rule 12(b)(6)**

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

III.    **LEGAL ANALYSIS**

A.    **Disability Discrimination**

Lewis failed to exhaust administrative remedies on her disability discrimination claim. "Prior to filing a law suit alleging violations of the ADA . . . , a plaintiff must first exhaust administrative remedies." *Snead v. Bd. of Educ. of Prince George's County*, 815 F. Supp. 2d 889, 894 (D. Md. 2011) (citations omitted). "Under [the ADA], the exhaustion requirements and filing procedures are identical to those applicable to claims under Title VII." *Id.* (citations omitted).

"In order to maintain an action under Title VII, a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct." *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th 2004) (citation omitted). "This period is extended to 300 days in cases such as this, when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Id.* (citation and internal quotation marks omitted); *see also* 29 C.F.R. § 1601.74 (designating the Maryland Commission on Human Relations as a Fair Employment Practices Agency). Allegations based on incidents that take place more than 300 days after the alleged discriminatory event are entitled to no weight for the purposes of ruling on a motion to dismiss. *See Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 n.1 (D. Md. 2011) (citation omitted).

In this case, Lewis alleges that MVT discriminated against her in August 2009 when she started experiencing seizures and MVT refused to allow her to return to work. Although Lewis fails to specify the date on which MVT told her she could not return to work, the Amended Complaint is amenable to only the inference that this event took place right around the time that

Lewis started experiencing seizures (i.e., early August, 2012).[2] In fact, Lewis specifically states in her EEOC charge that Wahu told her she could not return to work on August 5, 2009. Doc. No. 10-2 at 1.

Accordingly, construing the Amended Complaint favorably, the discriminatory act must have occurred no later than August 31, 2009. Thus, for the August 2009 discriminatory act to be entitled to weight, Lewis would have had to have filed her EEOC charge by June 27, 2010. But Lewis's EEOC charge unequivocally states that she filed it on March 15, 2011. *Id.* Therefore, the August 2009 act receives no weight. As this is the sole discriminatory act that the Amended Complaint alleges, it is necessarily devoid of any allegations creating a plausible inference of disability discrimination.

Lewis might argue that the August 10, 2010 incident in which MVT sent her a letter "indicating the possibility of [her] returning to work" constitutes a discriminatory act sufficient to stave off dismissal. This argument would fail for two reasons. First, on its own, the assertion that MVT issued a letter in August 2010 "indicating the possibility" of allowing Lewis to return to work is insufficient to create a plausible inference of disability discrimination.

Second, insofar as the August 2010 letter is potentially probative of discrimination, it is implausible that it constitutes a continuing violation. "The continuing violation theory (a type of equitable tolling) applies where the plaintiff proves that it would have been impossible for a reasonably prudent person to learn that [an employment action] was discriminatory." *Tasciyan v. Med. Numerics*, Civil Action No. 11–1467 AW, 2011 WL 6097977, at *5 (D. Md. Dec. 6, 2011) (alterations in original) (citations and internal quotation marks omitted). "Generally, [s]uch impossibility exists only where the plaintiff is unaware of the facts giving rise to the claim

_____

because the defendant has intentionally concealed them." *Id.* (citation and internal quotation marks omitted).

Here, according to Lewis's own allegations, the MVT's discrimination was on full display in August 2009. Furthermore, the second allegedly discriminatory act stood in isolation from the first. That is, the Amended Complaint contains no allegations creating a connection between these two acts. Thus, even if MVT "indicated the possibility" of rehiring Lewis in August 2010, this act would fail to constitute a continuing violation such that the August 2009 act would retain weight.

For these reasons, the Court dismisses Lewis's ADA claim. This dismissal is with prejudice considering that (1) Lewis failed to exhaust administrative remedies; (2) failed to respond to MVT's Motion to Dismiss; and (3) failed to state a cognizable ADA claim in both her Complaint and Amended Complaint.

## B.    Retaliation

Lewis's retaliation claim fails as a matter of law for three reasons. First, as with her disability discrimination claim, Lewis failed to exhaust administrative remedies. Assuming one could plausibly construe MVT's August 2009 refusal to reinstate Lewis as opposition, this act is entitled to no weight. For its part, the August 2010 incident in which MVT supposedly suggested the possibility of permitting Lewis to return to work is insufficient to state a facially plausible retaliation claim.

Second, Lewis failed to exhaust administrative remedies because she neglected to file an administrative charge for retaliation. Federal courts generally lack subject matter jurisdiction over employment discrimination claims concerning which the plaintiff has failed to file a charge of discrimination. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009). The contents of the charge determine the scope of the plaintiff's right to file a federal lawsuit. *See*

*Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Usually, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent [employment discrimination] lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Thus, plaintiffs typically may not bring claims where the EEOC charge alleges discrimination on one basis and the complaint alleges discrimination on a separate basis. *See Bryant*, 288 F.3d at 132–33.

In this case, whereas the EEOC charge alleges discrimination on the basis of disability discrimination, the Amended Complaint alleges retaliation. Furthermore, there is no indication that the EEOC undertook an investigation for retaliation in response to Lewis's charge. This is unsurprising in view of the charge's sparse allegations, which mirror the Amended Complaint's.

In short, the allegations in the charge fail to create a reasonable inference of retaliation. As the Fourth Circuit has held, there is no presumption that evidence of retaliation will surface from the investigation of discrimination claims, or that retaliation claims otherwise fall within the scope of discrimination. *See id.*; *cf. Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 883 (D. Md. 2012) (citation omitted) (noting that, depending on the circumstances, evidence of retaliation may lack probative value for discrimination claims). Accordingly, Lewis failed to exhaust administrative remedies on her retaliation claim.

Lewis's retaliation claim also fails because it is facially implausible per se. To state a prima facie case of retaliation under Title VII, a plaintiff must establish: "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection exist[s] between the protected activity and the adverse employment

action." *Tasciyan*, 820 F. Supp. 2d at 675 (citing *Davis v. Dimensions Health Corp.*, 639 F.

Supp. 2d 610, 616–17 (D. Md. 2009)).

In this case, Lewis alleges that Wahu would not allow her to return to work after she

presented a doctor's note stating that she was fit for light duty. Had Lewis not failed to exhaust

administrative remedies concerning this allegation, it might support the inference that Lewis

engaged in opposition.

Still, the Amended Complaint would fail to create a plausible inference that MVT took an

adverse employment action in reprisal for this opposition. The allegedly adverse action of being

ordered off of work took place **before** Lewis presented her doctor's note. Therefore, it is illogical

to say that Lewis's submission of the doctor's note caused this action.

Alternatively, Lewis might argue that MVT's alleged 2009 and 2010 refusals to allow her

back to work constitute adverse actions. This argument would fail for similar reasons. The

adverse action must be in reprisal for the opposition. However, no opposition preceded these

actions and, therefore, they cannot conceivably constitute adverse employment actions. To the

extent Lewis alleges that the 2010 refusal is in retaliation for the 2009 opposition, this allegation

would fail to create a plausible inference of causation due to the one-year gap between these

incidents.

The preceding discussion demonstrates that Lewis failed to exhaust administrative

remedies on her retaliation claim on two separate grounds. The discussion also shows that the

retaliation claim is not cognizable. Consequently, the Court dismisses this claim with prejudice.

## C.      State-law Discrimination

Plaintiff also asserts a disability discrimination claim under §§ 2-601 *et seq.* of the

Maryland Fair Employment Practices Act (FEPA). This claim fails. It is well-established that

FEPA does not create a private right of action for disability discrimination. *See, e.g.*, *Childers v. Chesapeake and Potomac Tel. Co.*, 881 F.2d 1259, 1265–66 (4th Cir. 1989) (citing cases). Although *Childers* references the since-repealed Article 49B, § 16 of the Maryland Code, this law was later recodified, without substantive change, in §§ 20-601 *et seq.* of the State Government Article. *See Meade v. Shangri-La P'ship*, 36 A.3d 483, 494 n.9 (Md. 2012). Therefore, Lewis's FEPA disability discrimination claim is not cognizable.

Even though Lewis asserts no such claim, the Court will explore the possibility whether she has stated a cognizable disability discrimination claim under § 20-1202 of the State Government Article. Section 20-1202 applies to Howard, Montgomery, and Prince George's Counties. Md. Code Ann., State Gov't § 20-1202(a). In contrast to §§ 20-601 *et seq.*, it provides that "a person that is subjected to a discriminatory act prohibited by the county code may bring and maintain a civil action against the person that committed the alleged discriminatory act for damages, injunctive relief, or other civil relief." *Id.* § 12-1202(b).

Section 2-222 of the Administration Subtitle of the Prince George's County Code (PG Code) generally prohibits employers from discriminating against employees. PG Code, Admin. § 2-222 (2003). The definition of discrimination includes discrimination based on "physical or mental handicap." *Id.* § 2-186(a)(3).

The Administration Subtitle contains a set of provisions creating a Human Relations Commission (PGHRC). *See id.* §§ 2-185 *et seq.* One of the PGHRC's purposes is to eliminate discriminatory practices in the area of employment. *Id.* § 2-185(b). To this end, the Administrative Subtitle sets forth a series of investigation and enforcement procedures. *See id.* §§ 2-194 to 2-209. Among these procedures is the requirement that employees must file a

discrimination charge with the PGHRC within 180 days of the date of the alleged violation. *See id.* § 2-201.

In this case, Lewis failed to exhaust administrative remedies under the PG Code. The record leaves no trace that Lewis filed a complaint with the PGHRC.

Lewis's filing of the EEOC charge also fails to salvage her state law disability discrimination claim. Concededly, § 2-185 of the Administrative Subtitle suggests that the filing of an EEOC charge may excuse plaintiffs from filing a complaint with the PGHRC. *Cf. id.* § 2-185(c). But this provision takes two factors for granted. One is that the parallel process is "substantially similar" to the PGHRC's procedures. *Cf. id.* The second is that plaintiffs have made a good faith effort to exhaust the parallel procedures. Otherwise, a halfhearted effort to comply with the parallel process would satisfy the PGHRC's procedures, thereby short-circuiting them.

Here, even though the EEOC's procedures share sufficient overlap with the PGHRC's, Lewis failed to properly exhaust administrative remedies under the ADA. Lewis failed to comply with the federal requirement that she lodge her charge within 300 days of the underlying discrimination, which is more generous than § 2-201's 180-day requirement. Therefore, it forcibly follows that Lewis failed to exhaust administrative remedies under § 2-201.

For good measure, it also appears that Lewis's § 20-1202 claim is time-barred. Section 20-1202 requires plaintiffs to assert discrimination claims based on county codes "within two years after the occurrence of the alleged discriminatory act." Md. Code Ann., State Gov't § 20-1202(c)(1). In this case, the discriminatory act occurred in August 2009. Yet Lewis did not commence the instant action until March 29, 2012, which is over two and a half years from the date on which the alleged discrimination occurred.

The Court held above that FEPA creates no private right of action for violations of §§ 20-601 *set seq.* of the State Government Article. Further, the Court held that Lewis's colorable disability discrimination claim under § 20-1202 of the State Government Article fails as a matter of law. Therefore, the Court dismisses Lewis's state law disability discrimination claim with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** MVT's Motion to Dismiss. A separate Order follows.

| | |
|---|---|
| September 27, 2012 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |